JOSÉ MALGOR & Co., Plaintiff and Appellant, *v.* B. SILVA SUCRS. ET AL., Defendants and Appellees.

No. 10052. Argued December 1, 1949.—Decided January 20, 1950.

*Otero Suro & Otero Suro* for appellant. *Oscar Souffront* and
*A. Ramírez Silva* for appellees.

MR. JUSTICE MARRERO delivered the opinion of the Court.

At the close of plaintiff's evidence, the defendants filed a motion for nonsuit which was granted by the lower court. In the appeals taken from the judgments rendered,[1] the plaintiff maintains that the lower court erred (1) in deciding that it lacks a cause of action because it failed to request, prior to the filing of the complaint, an expert inspection of the beans involved herein; (2) in deciding that by virtue of the deposit in court of the merchandise it did not fulfil the obligations to which it bound itself when it entered into the contract with the appellees; (3) and in granting defendants' motions for nonsuit. Just as the parties have done, we shall jointly discuss the errors thus assigned.

In the District Court of Mayagüez separate complaints were filed against B. Silva Sucrs., M. A. Carlo e Hijos, Santiago Hnos., and López Hnos. Said complaints, couched in almost identical terms, essentially allege that the plaintiff is engaged in the business of importation and wholesale purchase and sale of groceries for the purpose of resale and that the defendants are partnerships constituted pursuant to the laws of Puerto Rico and also engaged in the purchase for resale of groceries and other articles; that the plaintiff sold

---

[1] The lower court rendered four separate judgments because four different cases are involved which include the same questions, which were heard jointly in said court and which have been consolidated on appeal.

to the defendants certain amounts (which are specified) of pink beans at an agreed price, to be shipped from California on the first fortnight of February 1948; that the steamer which brought said merchandise arrived at Mayagüez on the following March 7 and the defendants were notified of the arrival of the merchandise, whereupon the plaintiff issued the proper orders of delivery; that the defendants have re- fused to accept the merchandise and to pay for it; that the beans are deposited with the Mayagüez Dock and Shipping Co. in Mayagüez to the order of each one of the defendants: and that the said Mayagüez Dock and Shipping Co. is a duly registered mercantile partnership and a taxpayer which in its opinion offers sufficient guaranty. On the ground of these allegations the plaintiff prays that the judicial deposit of the merchandise be ordered and that the Mayagüez Dock and Shipping Co. be appointed depositary; and that after the proper legal proceedings, judgment be entered ordering the defendants to fulfill their contract with the plaintiff and hence that the former be ordered to pay to the plaintiff the value of the merchandise involved, with legal interest, plus costs and attorney's fees. The complaints were filed and the lower court, on that same day, ordered the judicial deposit of the merchandise and designated as depositary the entity suggested by the plaintiff.

In their answer the defendants interposed the defenses at law to the effect that the court lacked jurisdiction to en- tertain the subject matter and that the complaints do not adduce facts sufficient to constitute a cause of action. They also raised the defense that the sales were made by fixed quality known to the commerce of Puerto Rico and that the merchandise offered did not comply with said requisite. They likewise set up as a special defense the fact that the court lacked jurisdiction to entertain the suit, because the plaintiff had not deposited in court the merchandise prior to filing the complaints and, furthermore, because it did not comply with

the provisions of § 245 of the Code of Commerce. Shortly thereafter the parties filed stipulations consenting, inasmuch as the merchandise was perishable by the action of time, to its sale in public auction as soon as possible and that the proceeds thereof be deposited in court. They also agreed that three samples be taken of each parcel of beans, which would be duly sealed in a box, and that one of those samples be delivered to the clerk of the court and another to each one of the parties. They also stated in the stipulations that these were not to be considered as waiver of the rights they might have in the suit, nor as waiver of any alleged defense or which might be alleged within the proceeding. The stipulations having been approved by the court, the samples were taken, the merchandise sold in public auction, its proceeds deposited in the office of the clerk of the court, and after separate interrogatories to the defendants with respect to which the court entered orders of approval which were complied with, the case went to trial. After extensive oral and documentary evidence was introduced by the plaintiff, the defendants filed a motion for nonsuit which was at first overruled by the court. Upon the defendants moving for the reconsideration of the oral order entered and after written briefs were filed, the court, in a lengthy order, rendered judgment granting the motion for nonsuit and dismissing the complaint, with costs, but without attorney's fees. The court acted correctly.

A motion for nonsuit admits all the evidence introduced by the plaintiff in the light most favorable to it. *Pagán* v. *Santiago*, 69 P.R.R. 136, 139; *Villanueva* v. *Suárez et al.*, 41 P.R.R. 39; *Shaw* v. *Missouri Pacific R. Co.*, 36 Fed. Supp. 651. So that there being only a scintilla of evidence to support a cause of action the motion should be overruled. Was a cause of action alleged herein and was there such scintilla of evidence to support it? That is truly the gist of the question before us.

 There is not the least doubt that the sales involved here were commercial transactions. Section 243 of the Code of Commerce, 1932 ed.; *Nieves* v. *Sucrs. de J. Morales Díaz*, 62 P.R.R. 732. Nor that the merchandise involved in the contracts of purchase and sale between the plaintiff and the defendants was received and its delivery properly tendered. The dispute between the parties arose mainly around the quality of the beans object of the contracts entered into by them. The plaintiff maintained at all times that it had received and offered to deliver to the defendants pink beans No. 2 and the latter on their part alleged that the products offered to them was not of the quality known to commerce as pink beans of said number and that, on the contrary, they were offered the delivery of merchandise of an inferior quality.

The evidence introduced by the plaintiff tended to establish all the allegations of its complaint and, as to the quality of the merchandise, that it was of the kind known in the Mayagüez market as pink beans No. 2. The plaintiff also offered evidence to the effect that it proposed to the defendants by different means an arbitration which would include an expert's report.[2]

Now, does the Act demand as a prerequisite to the filing of a complaint of this nature that the plaintiff comply strictly with the provisions of § 245 of the Code of Commerce before resorting to the courts with any other proceeding? We think so. That Section—which was 327 of the Code of Commerce of 1886—as amended by Act No. 42 of April 25, 1930 (Sess. Laws, pp. 320, 348), literally copied, provides:[3]

"Section 245.—If a sale is made by samples or by fixed quality known to commerce, the purchaser shall not refuse to receive

---

[2] See the testimony of the witnesses Thomas Boothby, Manuel A. Ramírez and Emilio Figueroa Peiro at pp. 40, 94, and 145–174 of the transcript of evidence, respectively.

[3] The 1930 amendment consists only in the addition of the last paragraph.

the goods contracted for, provided they conform to the sample or to the quality previously stated in the contract.

"*In case the purchaser refuses to receive said goods, experts shall be appointed by the parties, and said experts shall decide as to whether or not the goods are receivable.*

"Should the experts decide that the goods are receivable, the sale shall be considered as consummated. Otherwise, the contract shall be rescinded without prejudice to such indemnity as the buyer may be entitled to.

"*If either of the parties refuses to appoint an expert or unwarrantedly delays such appointment, the other party, on the expiration of the term agreed upon, or, if there is no agreement, after a reasonable term fixed by notarial requisition, may request such judicial authority as may be competent to designate one or more experts whose decision shall be final for the purposes of the preceding paragraph.*" (Italics ours.)

A thorough examination of the question before us convinces us that the procedure specified in § 245, *supra*, is exclusive and that when the commercial purchase and sale is made by sample or by quality known to commerce and the purchaser's refusal is based on the fact that the merchandise sought to be delivered is not according to the sample or does not conform to the known quality, the parties must give strict compliance to the provisions of said Section. Complaints such as the one involved here, in which it was not alleged that the services of an expert were engaged in the manner provided by § 245, *supra*, whose text is imperative, clearly do not allege a cause of action.

It is true that any defects in a complaint may be considered as amended by the evidence,[4] but in these cases the complaints did not allege, nor did the evidence show, that upon the purchasers' refusal to receive the beans, the parties intended to appoint experts who would decide whether they were receivable. Likewise, it was not shown that upon the purchasers' refusal to appoint such experts or upon their unjustified delay in making the appointment, or on the expi-

---

[4] Rule 15(*b*).

ration of the term agreed upon, or in the absence of an agreement, after a reasonable term fixed by notarial requisition, the seller requested such judicial authority as may be competent to designate one or more experts in each case, as specifically required by the aforesaid Section of the Code of Commerce. In the absence of such allegations or of evidence to that effect, the lower court did not err in upholding the motions for nonsuit. It is unquestionable that the evidence tended to show that the plaintiff proposed separate arbitrations which would include the submission of the matter to experts, but that was not enough. Strict compliance with the clear language of the law already stated was indispensable, and such compliance was missing here. See Gay de Montellá, Tome III, vol. I, Spanish Code of Commerce, p. 175; Lorenzo Benito, *Derecho Mercantil*, Vol. II, Third ed., (1924) p. 304; and Manresa, *Ley de Enjuiciamiento Civil*, Third ed. (1910) p. 569.

The deposit requested by the seller did not lie. Pursuant to § 250 of the Code of Commerce "If the purchaser refuses *without just cause* to receive the goods bought, the vendor may demand the fulfilment or rescission of the contract, depositing the merchandise in court in the first case." (Italics ours.) But here the rejection of the beans was *without just cause*, but because according to the purchasers the quality of the beans offered to them was different from that which was known to commerce.

The judgments appealed from will be affirmed.

